## COMMONWEALTH vs. JOSEPH C. PAULEY.

Suffolk.   March 5, 1975. — July 2, 1975.

Present: TAURO, C.J., QUIRICO, BRAUCHER, HENNESSEY, & KAPLAN, JJ.

*Constitutional Law,* Due process of law, Inference, Self-incrimination. *Words,* "Prima facie responsible."

Discussion of the expression "prima facie evidence" [290-292]; review of cases decided by the Supreme Court of the United States discussing the constitutional validity of the use in criminal trials of permissive inferences or presumptions of one fact from another fact [292-299].

At the trial of a complaint charging the defendant with "being the driver" of a motor vehicle who "did . . . deposit a copper slug . . . in a meter at the end of the tunnel [under Boston harbor] with intent to evade payment of the toll" lawfully established by the Massachusetts Turnpike Authority, where it appeared that the police officer on duty, the only witness, could not identify the operator, the sole occupant of the vehicle, that the operator intentionally evaded payment of the toll, and that the defendant was the registered owner of the vehicle and was present in court, it was held that admission in evidence of a regulation of the authority that if a vehicle is operated in violation of any of its regulations "and the

identity of the operator . . . cannot be determined, the person in whose name such vehicle is registered shall be deemed prima facie responsible for such violation" did not infringe any due process right, or privilege against self-incrimination, of the defendant, and he was justly found guilty beyond a reasonable doubt. [288-298]

COMPLAINT received and sworn to in the East Boston District Court on April 5, 1974.

The case was heard by *Elam*, J.

*Sumner B. Gillette* for the defendant.

*Kevin W. Khouri*, Assistant District Attorney, for the Commonwealth.

KAPLAN, J.   On March 19, 1974, Alfred W. Blago, a State police officer on duty at the East Boston exit from the Callahan Tunnel, heard one of the automatic toll collection machines signal that a vehicle had passed through on its way out of the tunnel without a deposit by the operator of the proper twenty-five cent toll.   Blago noted the license plate number of the car, but having no more than a side and back view of the operator, who was alone in the vehicle, he could only observe that the operator had long shoulder length hair and wore glasses. Blago did not stop the car and apprehend the operator. It may be surmised he was not in a position to do so.

Blago retrieved a copper slug from the machine, further assuring himself that the operator had violated Part Two, Section 4, of the "Rules and Regulations for the Use of the Sumner Tunnel and the Lt. William F. Callahan, Jr., Tunnel" (as amended by Amendment No. 1 effective June 22, 1967), which provides that "[n]o person shall do . . . any act with intent to evade payment of toll . . .."[1]   This rule was promulgated by the Massachusetts Turnpike Authority, which has responsibility for

---

[1] Section 4 reads as follows:   "Evasion of Toll.   No person shall do, or attempt to do, any act with intent to evade payment of toll or to defraud the Authority.   Failure to stop at the toll booth or refusal to pay a toll by a driver about to use the tunnel from East Boston to Boston or who has used the tunnel from Boston to East Boston shall be deemed an act done with intent to evade payment of toll."

operation of the Sumner and Callahan tunnels, under the power granted to it by St. 1958, c. 598, § 5 (d), "To establish rules and regulations for the use of the . . . [tunnels], and to provide penalties for the violation of said rules and regulations not exceeding fifty dollars for each offence, which may be recovered by indictment or complaint before a district court and shall be . . . paid to the Authority."[2]

From the license plate number it was learned that the car was registered to the defendant, Joseph C. Pauley. Blago accordingly swore out a complaint in the East Boston District Court charging that Pauley, "being the driver of a motor vehicle which had used the Callahan Tunnel . . . did . . . deposit a copper slug . . . in a meter at the end of the tunnel with intent to evade payment of the toll." After trial, Pauley was found guilty and fined the maximum $50, with costs of $12.50. Pauley appealed to the Jury of Twelve Session of the Municipal Court of the City of Boston. He then duly waived a jury. At the trial in the Municipal Court, Blago was the only witness. He testified to the incident at the tunnel as recounted above. The defendant, who was present in court, had

---

[2] Statute 1952, c. 354, § 5 (i), amended by St. 1955, c. 653, § 1, had allowed the Turnpike Authority "[t]o establish rules and regulations for the use of the turnpike," and the 1958 enactment authorizing tunnel regulations was modeled on that provision. The regulations established under the two statutes are generally similar, due allowance being made for the difference between turnpike and tunnel conditions; thus Part Two, Section 6, of the "Rules and Regulations for the Use of the Massachusetts Turnpike, Including the Boston Extension Thereof," provides that "[n]o person . . . shall do . . . any act with intent to . . . evade payment of toll."

Besides the rule concerning evasion of toll, the rules promulgated for the tunnels govern matters such as the types of vehicles which are prohibited from using the tunnels, speeding, driving to endanger, driving under the influence of liquor, obedience to orders of tunnel police, staying in a lane, and leaving adequate space between vehicles.

Drivers in the tunnels (and on the turnpike) are also subject to the general statutes governing the operation of motor vehicles in Massachusetts and providing criminal penalties for violations.

short hair and was not wearing glasses. Blago said he could not, "under oath," make positive identification of the defendant as the operator. It was, however, stipulated that the defendant was the registered owner, and that the operator at the time and place testified to had attempted to evade payment of the toll in violation of the tunnel regulation. The Commonwealth finally offered the tunnel rules and regulations in evidence, directing the court's attention to Part Five, Section 2, which provides that "[i]f a vehicle is operated within tunnel property in violation of any provision of these rules and regulations and the identity of the operator of such vehicle cannot be determined, the person in whose name such vehicle is registered shall be deemed prima facie responsible for such violation." [3] The regulation was received over the defendant's objection and exception. The defendant offered no evidence. The judge found him guilty and fined him $25, with costs of $6.25. No findings were made. The case is before us on a substitute bill of exceptions, and the issue is the validity as a matter of due process of the last quoted regulation,[4] particularly the use made of it to furnish an evidential link to prove that the defendant

---

[3] Part Three, Article VIII, Section 2, of the turnpike rules and regulations is to the same effect.

[4] It could be argued that St. 1958, c. 598, § 5(d), empowering the Authority to make rules governing the use of the tunnels, falls short of authorizing a regulation making the owner of a vehicle "prima facie responsible" for violation of tunnel rules: such a regulation, it could be urged, is not one governing the use of the tunnels, but is rather a regulation of evidence or procedure in the courts. Cf. *Thomes* v. *Meyer Store Inc.* 268 Mass. 587 (1929) (G. L. c. 231, § 85A, which made ownership of a vehicle prima facie evidence of responsibility for the conduct of the driver of the vehicle in tort actions, was a rule of evidence, not substantive law, and so could be applied retroactively to accidents antedating the statute). However, a conclusion that the broader power was delegated by the Legislature is supported by the fact that c. 598, § 5 (d), was enacted after the Authority, under similar legislation, had adopted a similar regulation for the turnpike. See nn. 2 and 3 above. There can be reliance, also, on c. 598, § 5 (j), which entitles the Authority "[t]o do all . . . things necessary or

was the person who committed the act with intent to evade the toll.[5]

1. We turn to a closer reading of the regulation to ascertain the meaning of the expression "prima facie responsible." Cognate expressions such as "prima facie evidence" occur often in Massachusetts in civil contexts and have acquired a well settled meaning there. See *Cook v. Farm Serv. Stores, Inc.* 301 Mass. 564, 566 (1938); Leach & Liacos, Massachusetts Evidence 52-62 (4th ed. 1967). According to the Massachusetts view, when, by statute or common law, one fact probative of another is denominated prima facie evidence of that second fact, proof of the first or basic fact requires a finding that the second, the inferred or presumed fact, is also true. The finding is mandatory. To avert this result, the opponent must assume the burden of production (the burden of persuasion remains with the proponent). It is only when the opponent has introduced sufficient evidence, which, cast against the natural inferential value of the basic fact, creates an issue of fact for the trier, that the opponent has satisfied his burden and the mandatory effect disappears. In a case tried by jury where the opponent does not assume his burden, the judge should charge that if the jury find the basic fact, they are required to find the inferred fact; if the basic fact is admitted or otherwise undisputed, the judge should charge that the jury must find the inferred fact, and if

---

convenient to carry out the powers expressly granted in this act." The defendant has not contended that the regulation, if constitutional, is beyond the powers delegated to the Authority.

[5] There is no comparable use of ownership as proof of responsibility for traffic infractions in the general traffic laws of the Commonwealth, G. L. cc. 89, 90.

Connecticut and Pennsylvania have statutes making ownership prima facie evidence of operation at the time of a traffic law violation. Pa. Sts. Anno. Tit. 75, § 1212 (1971) (general provision). Conn. Gen. Sts. Anno. Tit. 14, § 14-107 (Supp. 1975) (specified offenses). See n. 16 below.

the inferred fact encompasses the substance of the case, the judge should direct a verdict.[6] The expression "prima facie evidence" or the like also appears in criminal contexts. The effect of such evidence, unrebutted, cannot be so strong as in civil cases because of the established principle that a verdict may not be directed against a defendant in a criminal prosecution, see Wigmore, Evidence, § 7495, p. 312 (2d ed. 1940), with the corollary proposition that the trier of fact, judge or jury, cannot be compelled to find against the defendant as to any element of the crime. The handling of unrebutted "prima facie evidence" in a criminal case in the Commonwealth is illustrated by the judge's charge to the jury in *Commonwealth v. Anselvich,* 186 Mass. 376 (1904). In that case a junk dealer was tried for violating a statute, R. L. c. 72, § 17, forbidding the trafficking in so called registered bottles; the statute provided that "possession by any junk dealer . . . of any such vessels, without the written consent of, or purchase from, the owner thereof, shall be prima facie evidence of unlawful . . . traffic in the same." The judge instructed the jury that "if this party was a junk dealer . . . the possession of these articles without the written consent of the owner, or without their having been purchased from the owner, is sufficient, and nothing else appearing, to warrant the jury in finding that he has done the things that the law prohibits him from doing. The words 'prima facie' mean practically this: That on that evidence alone, nothing else appearing, you would be warranted in finding . . . in the words of the statute, that there was an unlawful . . . traffic in them." Record p. 45. Thus, in the absence of

---

[6] Among the decisions establishing these propositions are: *Cook v. Farm Serv. Stores, Inc.* 301 Mass. 564, 566-567, 569 (1938); *Hobart-Farrell Plumbing & Heating Co.* v. *Klayman,* 302 Mass. 508, 509-510 (1939); *Salter* v. *Leventhal,* 337 Mass. 679, 696-697 (1958); *Boxer* v. *Boston Symphony Orchestra, Inc.* 342 Mass. 537, 538 (1961); *Pahigian* v. *Manufacturers' Life Ins. Co.* 349 Mass. 78, 85 (1965).

competing evidence, the jury were permitted, but not required, to find that the inferred or presumed fact was true beyond a reasonable doubt.   See *Commonwealth v. Harvard,* 356 Mass. 452 (1969) (certificate of result of official chemical analysis of narcotic drug is prima facie evidence of its composition; judge's charge at Record pp. 89-90); cf. *Brightman* v. *United States,* 7 F. 2d 532 (8th Cir. 1925) (citing the *Anselvich* case).

As the present case is criminal (see *Commonwealth* v. *Federico,* 354 Mass. 206 [1968]), it is to be assumed that the judge understood and applied the term "prima facie responsible" in the sense just mentioned:   "nothing else appearing," the regulation permitted, but did not oblige him, to draw from the basic agreed fact that the defendant was the registered owner of the car, the inferred or presumed fact that the defendant was "responsible" for the undisputed intentional evasion of the toll by the operator of the car.[7]

2. A line of cases in the Supreme Court of the United States has discussed the constitutional validity of the use in criminal trials of permissive inferences or presumptions structurally the same as the Massachusetts prima facie inference at bar.   The court has upheld such inferences as applied to certain situations, and struck them down as applied to others.   It has had trouble developing a rationale for its decisions.   But the problems encountered are clear.   If too loosely allowed, permissive inferences would tend to compromise the constitutional canon in criminal

---

[7] The only other evidence in the case, that the officer's fleeting impression of the driver of the car did not match the appearance of the defendant in court, may have been introduced simply to indicate the occasion for the use of the prima facie inference:   the regulation invokes the inference when "the identity of the operator of the vehicle cannot be determined."

In general, the police will prefer, if they can, to apprehend a violator on the spot.   We need not deal with the speculative question of the application of the regulation where the police make no attempt to apprehend a violator when they could easily have done so, but go against the registrant instead.

cases that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U. S. 358, 364 (1970).[8] On the other hand, suppose the natural probability underlying the inference is strong, yet the defendant may easily produce evidence to rebut it, if false, without infringing his privilege against self-incrimination. Much can then be said for permitting the fact finder to draw the inference if persuaded that the combination of natural chance and absence from the evidence of an explanation consistent with innocence shows the defendant to be guilty beyond a reasonable doubt. See *Barnes* v. *United States*, 412 U. S. 837, 845-846 (1973). Cf. Ashford & Risinger, Presumptions, Assumptions, and Due Process in Criminal Cases: A Theoretical Overview, 79 Yale L. J. 165, 180-186 (1969). It should be emphasized that the permissive inference or presumption involves no shift in the burden of persuasion, which remains on the State throughout,[9] and that the weight to be accorded the inference in all the circumstances of a particular case is for the trier in the last analysis.[10] The trier may decline to make the inference even when the basic fact is undisputed and no re-

---

[8] *In re Winship* applies although the criminal offense is a minor one. As the court noted, a conviction not entailing loss of liberty may still stigmatize the offender.

[9] It follows from *Winship* that the burden of persuasion may not be shifted to the defendant on any element of the crime. For example, as to the matter of alibi, see *Commonwealth* v. *McLeod*, 367 Mass. 500, 502 (1975); *Stump* v. *Bennett*, 398 F. 2d 111, 113 (8th Cir. 1968) (en banc), cert. den. 393 U. S. 1001 (1968); *Smith* v. *Smith*, 454 F. 2d 572, 577-579 (5th Cir. 1971). See also *Mullaney* v. *Wilbur*, 421 U. S. 684 (1975) (unconstitutional to shift to defendant, seeking to avoid murder conviction, the burden of persuasion as to whether killing took place in heat of passion).

[10] The nature of a permissive inference or presumption is illuminated by *Turner* v. *United States*, 396 U. S. 398 (1970), one of the cases to be discussed below. A statute (21 U. S. C. § 174 [1964]) made criminal the knowing importation into the United States of a

buttal has been attempted; the trier may do so the more readily when the evidence is not altogether one-sided.[11]

To review the Supreme Court cases briefly: *Tot* v. *United States,* 319 U. S. 463 (1943), involved a charge against a defendant of receiving firearms or ammunition shipped or transported or received in interstate commerce, after he had been convicted of a violent crime. The statute created a presumption that the possession of such goods by one so convicted meant that they had been received in violation of the act. The court, examining the possibility that a defendant had received the goods before the statute became effective, or that he had acquired the goods in an intrastate transaction, found no "rational connection" between the primary fact and the presumed fact, and so refused to allow a jury to convict on the basis solely of the possession and the statutory inference. It ruled, moreover, that the mere "comparative convenience" of looking to a defendant to produce rebuttal evidence was not in and of itself a justification for indulging the

---

narcotic drug contrary to law, as well as certain transactions in such drugs, knowing them to have been imported contrary to law. It provided further: "Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury." This might on its face suggest something stronger than a permissive presumption, but the court described the operation of the presumption as follows: "Under prior decisions, principally *United States* v. *Gainey,* 380 U. S. 63 (1965), such statutory provisions authorize but do not require the trial judge to submit the case to the jury when the Government relies on possession alone, authorize but do not require an instruction to the jury based on the statute, and authorize but do not require the jury to convict based on possession alone." 396 U. S. at 406, n. 6. See *id.* at 406-407.

See, too, the trial judge's charge set out in *Barnes* v. *United States,* 412 U. S. 837, 840 (1973), also discussed below.

[11]Suppose in the present case we add only evidence of the time of day when the episode occurred. Common sense might suggest to the trier that passenger cars are more likely to be driven by their registered owners during commuting hours than during working hours.

presumption. 319 U. S. at 467-469.[12] There followed *United States* v. *Gainey*, 380 U. S. 63 (1965), and *United States* v. *Romano*, 382 U. S. 136 (1965), respectively upholding a presumption that the unexplained presence of a person at the site of an illegal still could be used to infer guilt of the crime of carrying on the business of illegal distilling, but, to the contrary, striking down a presumption that such presence could be used to infer guilt of the crime of possessing the still. In these cases the court was adhering to the *Tot* standard of "rational connection."

That standard was restated in *Leary* v. *United States*, 395 U. S. 6 (1969), which, after a careful consideration of the probability factors involved, reversed a conviction based on a permissive presumption that one in possession of marihuana knew that it was illegally imported. The *Leary* case read the *Tot* standard to require that it could "be said with substantial assurance" that the presumed fact followed "more likely than not" from the primary fact. 395 U. S. at 36. The court also recognized that, because the case was criminal, not civil, there was a question whether the "rational connection" test was sufficiently strict; perhaps the connection must itself be so strong as to satisfy a standard of proof beyond a reasonable doubt. *Id.* at 36, n. 64. The *Leary* case concluded that the question need not be decided because the particular presumption failed even the more lenient test.

The suggestion that the required standard might be more severe than that mentioned in *Tot* and elaborated in *Leary* also appeared in *Turner* v. *United States*, 396 U. S. 398 (1970), but again the issue was not decided. Two convictions were sustained because the relevant statutory presumptions were so strong as to satisfy the "beyond a reasonable doubt" standard; a third conviction

---

[12] That ease of access by the defendant to evidence which can rebut a presumption is not by itself a basis for validating the presumption, is also forcefully stated in *Turner* v. *United States*, 396 U. S. 398, 407-408, n. 8, third par. (1970), considered below.

was set aside because the proved fact did not appear to make the fact presumed under the statute "more likely than not"; and a fourth conviction was set aside because "the possibility . . . [was] sufficiently real" that the presumed fact was not true although the proved fact was.[13]

Learned commentators thought the *Turner* case in its fourth result embraced the stricter standard.[14]  But in the latest case in the series, *Barnes* v. *United States,* 412 U. S. 837, 843 (1973) (a six to three decision), the court stated that *Turner* did not decide the question.  It concluded, after surveying the cases, that "[t]he teaching of the foregoing cases is not altogether clear.  To the extent that the 'rational connection,' 'more likely than not,' and 'reasonable doubt' standards bear ambiguous relationships to one another, the ambiguity is traceable in large part to variations in language and focus rather than to differences of substance.  What has been established by the cases, however, is at least this: that if a statutory inference submitted to the jury as sufficient to support conviction satisfies the reasonable-doubt standard (that is, the evidence necessary to invoke the inference is sufficient for a rational juror to find the inferred fact beyond a reasonable doubt) as well as the more-likely-than-not standard, then it clearly accords with due process."

The *Barnes* case involved a charge of knowingly possessing stolen checks; challenged was the common law

---

[13] The statutory presumptions were (i) that unexplained possession of certain drugs connoted knowledge of illegal importation of the drugs, and (ii) that possession of the drugs without tax stamps connoted purchase of the drugs from a source other than an original stamped package.  The presumptions held as to heroin, but failed as to cocaine; it was the tax stamp presumption with regard to cocaine to which the court applied the language about a "sufficiently real" possibility.

[14] See McCormick, Evidence, § 344 (2d ed. 1972); LaFave & Scott, Criminal Law, § 21 (1972); Christie and Pye, Presumptions and Assumptions in the Criminal Law:  Another View, 1970 Duke L. J. 919, 923, n. 24; Holland and Chamberlain, Statutory Criminal Presumptions:  Proof Beyond a Reasonable Doubt? 7 Valp. L. Rev. 147, 160-161 (1973).

permissive inference that (as the trial judge charged) "[p]ossession of recently stolen property, if not satisfactorily explained, is ordinarily a circumstance from which you may reasonably . . . find, in the light of the surrounding circumstances shown by the evidence in the case, that the person in possession knew the property had been stolen." 412 U. S. at 839-840. In the passage of the opinion now to be quoted, Mr. Justice Powell for the court proceeded from the question of the raw probability that recent possession implied knowledge, to the significance of the circumstance that the possession was unexplained, i.e., that the defendant had not come forward. "In the present case the challenged instruction only permitted the inference of guilt from *unexplained* possession of recently stolen property. The evidence established that petitioner possessed recently stolen Treasury checks payable to persons he did not know, and it provided no plausible explanation for such possession consistent with innocence. On the basis of this evidence alone common sense and experience tell us that petitioner must have known or been aware of the high probability that the checks were stolen. Cf. *Turner* v. *United States*, 396 U. S. at 417; *Leary* v. *United States*, 395 U. S. at 46. Such evidence was clearly sufficient to enable the jury to find beyond a reasonable doubt that petitioner knew the checks were stolen. Since the inference thus satisfies the reasonable-doubt standard, the most stringent standard the Court has applied in judging permissive criminal law inferences, we conclude that it satisfies the requirements of due process." 412 U. S. at 845-846 (court's footnote numbers omitted).[15]

But if the defendant was being in any degree exposed to conviction because of a failure to explain, i.e., to pro-

---

[15] The court's footnote 11, appearing at the end of the quoted text, goes on to say: "It is true that the practical effect of instructing the jury on the inference arising from unexplained possession of recently stolen property is to shift the burden of going forward with evidence

duce, was there not an implicit infringement of his privilege against self-incrimination? This question was answered in the negative, at least for the situation before the *Barnes* court, with reliance on *Yee Hem* v. *United States,* 268 U. S. 178, 185 (1925), and also on an analysis made in the *Turner* case. The *Barnes* court said: "[P]ossession could be satisfactorily explained by evidence independent of petitioner's [defendant's] testimony. Introduction of any evidence, direct or circumstantial, tending to implicate the defendant in the alleged crime increases the pressure on him to testify. The mere massing of evidence against a defendant cannot be regarded as a violation of his privilege against self-incrimination." 412 U. S. at 846-847.

In the present case, taking what common sense suggests about the relationship of registration to operation together with the failure to produce, we think, following *Barnes* v. *United States,* that the judge as trier could justly find the defendant guilty beyond a reasonable doubt, although he was not obliged to do so.[16] Cf. Ashford & Risinger, Presumptions, Assumptions, and Due

to the defendant. If the Government proves possession and nothing more, this evidence remains unexplained unless the defendant introduces evidence, since ordinarily the Government's evidence will not provide an explanation of his possession consistent with innocence. In *Tot* v. *United States,* 319 U. S. 463 (1943), the Court stated that the burden of going forward may not be freely shifted to the defendant. See also *Leary* v. *United States,* 395 U. S. 6, 44-45 (1969). *Tot* held, however, that where there is a 'rational connection' between the facts proved and the fact presumed or inferred, it is permissible to shift the burden of going forward to the defendant. Where an inference satisfies the reasonable-doubt standard, as in the present case, there will certainly be a rational connection between the fact presumed or inferred (in this case, knowledge) and the facts the Government must prove in order to shift the burden of going forward (possession of recently stolen property)."

[16] The Connecticut and Pennsylvania statutes making ownership prima facie evidence of operation at the time of a traffic law violation (see n. 5 above) have been upheld by the courts. See *State* v. *Schonrog,* 2 Conn. Cir. 239 (App. Div. 1963); *Commonwealth* v. *Foulke,* 22 D. & C. (Pa.) 135 (1934). *Foulke* based its result on the

Process in Criminal Cases: A Theoretical Overview, 79 Yale L. J. 165, 183 (1969). As to the matter of production, in the normal course of events a defendant who was not using his car at the time of the alleged infraction should be able to demonstrate that fact with minimum effort without himself testifying, or, with no more effort, indicate why he was not in a position to make the demonstration and so should be accounted innocent. The present decision does not open the way to the unrestricted creation of statutory inferences resting on feeble foundations, for the constitutional questions would appear in a different light if the connection between basic and inferred facts were not intimate, or rebuttal evidence were less available to a defendant, or direct evidence were more readily available to the Commonwealth.[17]

*Exceptions overruled.*

---

"rational and reasonable connection between the facts proved and the ultimate fact presumed," saying that the inference "would seem to be a natural one and based upon a common experience that as a general rule the owner of a car drives his own vehicle," and on the opportunity given to the defendant to present facts in his defense to meet the force of the rule. 22 D. & C. at 138. *Schonrog* reasoned similarly, and a subsequent Connecticut case, *State* v. *Knudsen,* 3 Conn. Cir. 458, 462-463 (App. Div. 1965), reaffirming *Schonrog,* quoted *Foulke* as support for its conclusion.

[17]Permitting conviction for possession of a given article unless the accused produces evidence of having a license, can be justified by the rationale based on probabilities outlined in the text if there is a sufficient likelihood that persons having the possession are not licensed; it would typically be very easy for the accused to come forward with evidence of license. (The *Turner* case is near this model so far as it upholds a conviction based on a presumption that heroin lacking tax stamps was procured from a package without tax stamps.) Another theory has been suggested which can support the casting of a burden on the accused with respect to license: where the Legislature has power to prohibit conduct entirely, and means instead to regulate it closely, it may in furtherance of the regulation impose on a defendant the burden of showing that he has been granted a special privilege. See LaFave & Scott, Criminal Law, § 21 (1972). This court has upheld, as applied to a prosecution for carrying a

---

pistol in an automobile without license to do so, a statute, G. L.
c. 278, § 7, which provides that "[a] defendant in a criminal
prosecution, relying for his justification upon a license . . . shall prove
the same; and, until so proved, the presumption shall be that he is
not so authorized."    *Commonwealth* v. *Davis,* 359 Mass. 758 (1971).
See *Commonwealth* v. *Brunelle,* 361 Mass. 6, 9 (1972).    In *Johnson*
v. *Wright,* 509 F. 2d 828 (5th Cir. 1975), the court would not
countenance placing on the defendant the full burden of proving a
license for possession of a weapon, but there was no consideration of
the second theory.

It is perhaps worth mentioning that the Turnpike Authority could
have avoided constitutional questions in the present situation by
turning the offense into a "public welfare" offense (see *Common-
wealth* v. *Graustein & Co.* 209 Mass. 38, 42-43 [1911]; *Common-
wealth* v. *Minicost Car Rental, Inc.* 354 Mass. 746 [1968]; *United
States* v. *Dotterweich,* 320 U. S. 277, 280-281 [1943]; *Morissette* v.
*United States,* 342 U. S. 246, 250-263 [1952]; *United States* v. *Park,*
421 U. S. 658 [1975], in which any requirement of "intent to evade"
would be eliminated and the registered owner made liable in a stated
sum for failure of anyone operating his car to pay the toll.    The
instant regulation cannot be supported on a "public welfare" basis as
it requires proof of "intent."    See the discussion of this point in the
*Turner* case, 396 U. S. at 407-408, n. 8, second par. (1970); *Tot* v.
*United States,* 319 U. S. 463, 472 (1943).