## COMMONWEALTH vs. MARY ELLEN KLEIN.

Plymouth. November 5, 1986. — June 22, 1987.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Practice, Criminal*, Agreement between prosecutor and defendant, Dismissal, Instructions to jury, Assistance of counsel. *Larceny. Constitutional Law*, Vagueness of statute, Equal protection of laws, Assistance of counsel. *Evidence*, Prima facie evidence, Inference.

Where a District Court judge had ordered a charge of larceny by check continued without a finding on the conditions that the defendant make restitution to the payee and release any civil claims that she might have against the payee, and where the judge thereafter revoked his order on learning that the defendant intended to commence a civil action against the payee, the defendant was not entitled to dismissal of the complaint on the ground that the judge's actions infringed her rights under arts. 11 and 12 of the Massachusetts Declaration of Rights or the Fourteenth Amendment to the Federal Constitution in the absence of any evidence that either the prosecutor or the judge attempted to interfere with the defendant's right to sue the payee, and in view of the fact that the proposal that the defendant release her civil claims had been made at the suggestion of her own counsel in order to achieve an amicable disposition of the case. [311-312]

General Laws c. 266, § 37, which penalizes the act of writing a check with knowledge that the account on which it is drawn contains insufficient funds and with intent to defraud, and which makes the failure to deliver full payment within two days after notice of dishonor significant only on the issue of fraudulent intent, was not unconstitutionally vague and overbroad as applied to a defendant charged with a violation of the statute by purchasing merchandise from a department store by means of a check that was returned for lack of sufficient funds. [312-313]

At the trial of a defendant charged with larceny by check, no substantial risk of a miscarriage of justice was created by language in the judge's charge to the jury that, under the applicable statute, failure to pay within two business days after notice of dishonor was prima facie evidence that the check was issued with knowledge of an insufficiency of funds for its payment and with an intent to defraud and that, in the absence of competing evidence, they were permitted, though not required, to find the inferred facts beyond a reasonable doubt where, since there was

competing evidence in the form of the defendant's denial of fraudulent intent presented at trial, the jury could not have been properly influenced by the instruction even if it was constitutionally infirm, and where, apart from the statute, the jury's finding against the defendant on the issue of fraudulent intent was warranted by the evidence presented. [313-315] O'CONNOR, J., with whom LIACOS, J., joins, dissenting.

The defendant in a criminal case failed to demonstrate that the conduct of her trial counsel fell measurably below that which might be expected from an ordinary fallible lawyer and that prejudice resulted therefrom. [315-316]

COMPLAINT received and sworn to in the Hingham Division of the District Court Department on October 11, 1983.

On transfer to the jury session, the case was tried before *Charles E. Black*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Mary Ellen Klein*, pro se.

*Marjorie R. Corman*, Assistant District Attorney, for the Commonwealth.

LYNCH, J. After trial before a jury of six in District Court, the defendant appeals from her conviction of larceny by check, in violation of G. L. c. 266, § 37 (1984 ed.). She claims that the statute is unconstitutional and raises numerous other arguments for reversal of her conviction. We transferred the case to this court on our own motion. We affirm.

The charge stemmed from the defendant's purchase on June 7, 1983, of $79.71 worth of merchandise from a Zayre department store by means of a check that was returned for lack of sufficient funds. The defendant waived her right to an initial bench trial in favor of a jury trial in the first instance.

On January 20, 1984, the scheduled trial date, the defendant chose to be represented by court-appointed counsel, an opportunity she had rejected at the time of arraignment. After appointment, counsel conferred with the defendant and the assistant district attorney regarding possible disposition of the case. The trial judge was then informed that the defendant would be willing to make restitution and to refrain from instituting a civil action against Zayre. On the basis of that representation

the judge continued the case without a finding, in accordance with the recommendation of the Commonwealth. Shortly thereafter the judge learned that the defendant intended to commence a civil action against Zayre. After conferring with defense counsel and the assistant district attorney, the judge ordered that the criminal complaint be restored to the trial list.

At trial, the defendant was again represented by counsel, although she initially requested to "proceed in a dual capacity" and declined her attorney's assistance for the opening statement. The Commonwealth presented sufficient evidence to support her conviction.

1. On appeal, the defendant pro se argues that the judge's revocation of his order continuing the case without a finding upon payment of restitution and execution of a release amounted to a denial of the defendant's rights under the Massachusetts Declaration of Rights, arts. 11 and 12, and the Fourteenth Amendment to the United States Constitution. It is true that disposition of criminal cases conditioned on the execution of releases as to related civil claims has been deemed improper. See *Foley* v. *Lowell Div. of the Dist. Court Dept.*, 398 Mass. 800 (1986); *Enbinder* v. *Commonwealth*, 368 Mass. 214, cert. denied, 423 U.S. 1024 (1975); *Commonwealth* v. *Eaton*, 11 Mass. App. Ct. 732 (1981). We were recently critical of a judge who, sua sponte, offered to dismiss a case if the defendant would execute a waiver of his civil claims. *Foley* v. *Lowell Div. of the Dist. Ct., supra.*

In those cases, however, the judge or prosecutor proposed that a release be executed in exchange for a dismissal or a prosecutor's agreement to nolle prosequi. Here there is no evidence that the judge or prosecutor attempted to interfere with the defendant's exercise of her right to file a civil action. The judge informed the defendant that she had "a right to proceed against Zayre's and I would not interfere with that in any way, shape, or manner . . . if that was your option then I won't interfere with the option." Of equal significance is the fact that the condition of a release was not imposed upon the defendant in the course of trial, against her wishes. The pro-

posal that she release her civil claims arose at the suggestion of, and on the recommendation of, her counsel in order to achieve an amicable disposition of the case.

The upshot of the judge's rulings was that the defendant was afforded her right to a jury trial. The defendant cannot fairly argue that she was entitled to a dismissal as a matter of right.

2. The defendant also challenges the constitutionality of the statute governing larceny by check, G. L. c. 266, § 37.

General Laws c. 266, § 37, provides in relevant part: "Whoever, with intent to defraud, makes, draws, utters or delivers any check, draft or order for the payment of money upon any bank or other depositary, with knowledge that the maker or drawer has not sufficient funds or credit at such bank or other depositary for the payment of such instrument, although no express representation is made in reference thereto . . . if money or property or services are obtained thereby shall be guilty of larceny."

The statute further provides that: "As against the maker or drawer thereof, the making, drawing, uttering or delivery of such a check, draft or order, payment of which is refused by the drawee, shall be prima facie evidence of intent to defraud and of knowledge of insufficient funds in, or credit with, such bank or other depositary, unless the maker or drawer shall have paid the holder thereof the amount due thereon, together with all costs and protest fees, within two days after receiving notice that such check, draft or order has not been paid by the drawee."

The defendant argues that the statute lacks the "[c]onstitutional requirements of structural soundness and specificity," which we interpret as a claim that the statute is impermissibly vague. She also contends that the "operative fact" of failing to pay a check within two days of notice of dishonor also creates fatal ambiguity and vagueness.

The "operative fact" which must be found for conviction under the statute is not an omission, as the defendant laments, but the act of writing a check with knowledge of insufficient funds with intent to defraud. Failure to pay within two days

after notice of dishonor is not an element of the offense. The statute makes significant the failure to make full payment within two days of notice of dishonor only on the issue of fraudulent intent. See *Commonwealth* v. *Dunnington*, 390 Mass. 472 (1983); *Commonwealth* v. *Solari*, 12 Mass. App. Ct. 993 (1981).

The defendant's further contention that the statute is vague as to the concurrence of the "acts and omissions [and] . . . culpable knowledge and intent" adds nothing. General Laws c. 266, § 37, renders a defendant guilty not for the bank's acts but, rather, for the defendant's use of the check to obtain money, property, or services with the knowledge of an insufficiency of funds and with a fraudulent intent.

The defendant's remaining constitutionally based argument characterizes c. 266, § 37, as "overbroad" and its application as a violation of "equal protection." She cites no case in support of this argument. The overbreadth doctrine is essentially a modification of traditional rules of standing and is applicable only to First Amendment claims. *Broadrick* v. *Oklahoma*, 413 U.S. 601, 612 (1973). We perceive no protected conduct to be implicated here. The statute in question simply imposes criminal liability for issuing a check with knowledge that the account on which it is drawn contains insufficient funds, and with an intent to defraud.

Although the defendant has used the words "equal protection," she fails to raise an equal protection argument meriting our attention. We only note that the defendant has not established that a decision was made not to prosecute other offenders and that "failure to prosecute [other offenders] was either consistent or deliberate . . . and that the decision not to prosecute was based upon an impermissible classification such as race, religion, or sex" (citations omitted). *Commonwealth* v. *Franklin*, 376 Mass. 885, 894 (1978).

3. The defendant also argues that the judge's jury instructions were improper. Defense counsel indicated his approval and failed to object after they were presented to the jury. In such a case we need not consider the objections now raised to the judge's instructions. We review the judge's instructions only

to determine if there is a substantial risk of a miscarriage of justice. *Commonwealth* v. *Preziosi*, 399 Mass. 748 (1987). *Commonwealth* v. *Bryer*, 398 Mass. 9, 16-17 (1986).

The record reveals no instruction informing the jury of an evidentiary presumption (or irrebuttable presumption, as claimed by the defendant). Rather, the trial judge referred to the language of the statute, stating: "If the defendant is the maker or drawer and has received a notice that such check, draft, or whatever has not been paid by the drawee bank and she has not paid the holder of the check or draft the amount due thereon plus costs and protest fees within two business days after such notice, it shall be prima facie evidence of the intent to defraud and an acknowledge [*sic*] of insufficient funds or credit with such depository bank." The word "presumption" was never used, except to inform the jury of the presumption of the innocence of the defendant.

The instruction the judge did give with respect to prima facie evidence was in terms of a permissive inference. The judge explained with reference to prima facie evidence that "[i]n the absence of competing evidence the jury is permitted, though not required, to find that the inferred act was true beyond a reasonable doubt." The term prima facie evidence as used in the statute has been interpreted to mean the kind of inference that does not disappear on the introduction of evidence to the contrary; it remains evidence throughout the trial. See *Fuller* v. *Home Indem. Co.*, 318 Mass. 37 (1945). Therefore, the judge's instruction was more favorable to the defendant than an instruction consistent with this court's prior interpretation of the term prima facie evidence as used in the statute. Moreover, even if the statute is susceptible to constitutional attack, as is contended in the dissent, *infra* at 318-319, no miscarriage of justice results because the judge limited its use to situations where there was no competing evidence. Competing evidence in the form of the defendant's denial of fraudulent intent existed, so the judge's instruction concerning the inference was not prejudicial, although it had no relevance to their case, and no miscarriage of justice could have resulted from the instruction.

The jury finding against the defendant on the issue of fraudu-
lent intent was warranted apart from the statute. There was
evidence that on June 2, 1983, the defendant had $435.38 in
her account; that from June 2 to June 10 she wrote checks
totaling $578.03; that the account was subsequently overdrawn
during June on three separate occasions; and that the check
issued by the defendant was returned for insufficient funds on
or about June 27, 1983. There was also evidence that the
defendant was notified of that fact and that, if she failed to
pay the amount of the check within ten days, legal action
would be taken against her. There was also testimony that,
when the security manager telephoned the defendant on July
19, 1983, the defendant stated that she would be in to pay the
amount due on Saturday, July 23, 1983. The defendant did
not appear on that date. She made no contact with Zayre until
the last week in August, 1983, at which time she sent a check
for $30.00, which the security manager explained could not
be accepted under the circumstances. From this evidence the
jury could reasonably have concluded beyond a reasonable
doubt the defendant intended to defraud the complainant. See
*In re Winship*, 397 U.S. 358, 364 (1970).

In reaching the result here, we have not considered any
possible constitutional weakness in the statutory language creat-
ing a prima facie inference of intent to defraud from the fact
of failure to pay within two days of notice of dishonor.

4. The defendant raises numerous arguments with respect
to the conduct of her trial which may be categorized as objec-
tions regarding (1) assistance of counsel, and (2) rulings of
the judge. *Commonwealth* v. *Rondeau*, 378 Mass. 408, 412
(1979), sets forth a "two step inquiry" to be used in evaluating
claim of ineffective assistance of counsel: the defendant must
demonstrate "both (1) that the conduct of his trial counsel fell
'measurably below that which might be expected from an or-
dinary fallible lawyer,' *Commonwealth* v. *Saferian*, 366 Mass.
89, 96 (1974), and (2) that 'prejudice result[ed] therefrom.' "
*Commonwealth* v. *Sellon*, 380 Mass. 220, 223 (1980), quoting
*Commonwealth* v. *Rondeau, supra*. The defendant has satisfied
neither requirement. Defense counsel's advocacy at trial was
well within the standards of *Saferian*.

As stated in *Commonwealth* v. *Rondeau, supra* at 413, when "arguably reasoned tactical or strategic judgments of a lawyer are called into question, we do not 'second guess competent lawyers working hard for defendants who turn on them when the jury happen to find their clients guilty,' *Commonwealth* v. *Stone*, 366 Mass. 506, 517 (1974)," but rather require that such judgments be "manifestly unreasonable." *Commonwealth* v. *Adams*, 374 Mass. 722, 728 (1978). In this case, defense counsel's judgments were reasonable and furthered the fair and straightforward presentation of the defense.

Finally, the defendant raises before this court a list of complaints concerning pretrial procedure, the conduct of the trial, and the trial judge's rulings as to various motions. The judge conducted the proceedings with great tolerance for the defendant's behavior, which several times bordered on contempt. Furthermore, the defendant has failed either to indicate the nature of any alleged prejudice resulting from the actions and rulings she complains of, or to support such allegations with argument. Where the defendant merely lists alleged errors and complaints, without proper argument, that list does not merit our attention. Mass. R. App. P. 16 (a) (4), as amended, 367 Mass. 919 (1975).

*Judgment affirmed.*

O'CONNOR, J. (dissenting, with whom Liacos, J., joins). The jury reasonably could have understood from the judge's instructions that the defendant's failure to pay Zayre the amount of the check, plus additional costs and fees, within two business days after notice of dishonor, *by itself* permitted them to find beyond a reasonable doubt that, when the defendant issued the check, she knew there were insufficient funds for its payment, and she intended to defraud Zayre. In my opinion, such inferences were not warranted, and

therefore the instruction was erroneous.[1] Furthermore, the error requires reversal because, regardless of whether other evidence might have warranted findings of the requisite knowledge and intent, as the court concludes, surely it was not so overwhelming that the court may rightfully conclude that the jury's findings were uninfluenced by the erroneous instruction. Therefore, the instruction created a substantial risk of a miscarriage of justice, requiring reversal. *Commonwealth* v. *Williams*, 378 Mass. 242 (1979). *Commonwealth* v. *Freeman*, 352 Mass. 556, 564 (1967).

The judge instructed the jury that, under the statute, failure to pay within two business days after notice of dishonor is prima facie evidence that the check was issued with knowledge of an insufficiency of funds for its payment and with an intent to defraud. The judge then told the jury that, in the absence of competing evidence, they were permitted, though not required, to find that the inferred facts were true beyond a reasonable doubt. The court states, *ante* at 314, that, even if the inference was not constitutionally permissible, there was no miscarriage of justice because the judge limited the use of the inference to situations where there was no competing evidence. The court reasons that, because in this case there was competing evidence, the jury could not have been improperly influenced by the instruction even if it was constitutionally infirm. I do not agree. In my view, fairness requires that the impact of that instruction on the jury should not so readily be dismissed.

Since the defendant did not object at trial to the jury instructions, appellate review is confined to whether an error has occurred that creates a substantial risk of a miscarriage of justice. *Commonwealth* v. *Freeman, supra* at 561-564. In my view, if the instruction was constitutionally infirm, there is a substantial risk that it influenced the jury in a way unfairly

---

[1] I believe that it also would have been error for the judge to instruct the jury that they could consider the defendant's failure to reimburse Zayre *along with other evidence* in deciding the elements of knowledge and intent. In my view, failure to make the check good and to pay related costs simply had no tendency whatsoever, on the record in this case, to show an earlier criminal intent.

prejudicial to the defendant's rights. The court appears to reason that, in view of the presence of competing evidence, the prima facie evidence instruction must have been understood by the jury to be mere surplusage having no bearing on the case. But this ignores the fact that jurors reasonably assume that the purpose of jury instructions is to assist them in deciding the controversy before them in accordance with established rules. The jury, then, would have had good reason to conclude that the permissible inference about which the judge spoke, and which he did not specifically tell them was not available, was indeed available to assist them in deciding what the defendant knew and intended when she issued her check to Zayre. "Otherwise," the jurors might logically have inquired, "why would the judge have told us about the prima facie evidence provision and its inferential value?"

It is necessary to consider, therefore, whether the judge's instruction about the prima facie evidence provision in G. L. c. 266, § 37, was constitutionally sound. I believe that it was not. In several cases, the United States Supreme Court has discussed the use in criminal trials of inferences permitted by statute. See *Ulster County Court* v. *Allen*, 442 U.S. 140 (1979); *Barnes* v. *United States*, 412 U.S. 837 (1973); *Turner* v. *United States*, 396 U.S. 398 (1970); *Leary* v. *United States*, 395 U.S. 6 (1969); *Tot* v. *United States*, 319 U.S. 463 (1943). For a relevant discussion, see *Commonwealth* v. *Pauley*, 368 Mass. 286, 292-299 (1975). Certain principles, significant to this appeal, have emerged. Those principles have been articulated in *Ulster County Court* v. *Allen, supra*, as follows: First, a statutory inference "must not undermine the factfinder's responsibility at trial, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt." *Id.* at 156, citing *Mullaney* v. *Wilbur*, 421 U.S. 684, 702 n.31 (1975), and *In re Winship*, 397 U.S. 358, 364 (1970). It follows that, if a statutory permissive inference is the sole basis for finding an essential element of the crime, the inference must be warranted beyond a reasonable doubt. *Ulster County Court* v. *Allen, supra* at 166-167. Second, if a statutory permissive inference is not relied on as the sole basis for finding an essential

element of the crime, but simply constitutes a part of the proof of such an element, there at least must be some rational connection, in light of all the evidence in the case, between the basic fact proved and the ultimate fact in issue. There is a rational connection when the ultimate fact (the element of the crime) more likely than not follows from the basic fact. *Id.* at 157, 163-167.

As I have stated, the judge's instruction might reasonably have led the jury to believe that the statutory inference by itself would permit them to find that, at the time of issuance, the defendant knew the check would not be paid, and she intended to defraud Zayre. Therefore, the critical question is whether, standing alone, the defendant's failure to make the check good within the statutory period would satisfy any rational trier of fact beyond a reasonable doubt that the defendant had issued the check dishonestly. *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979). I would answer that question in the negative. Common sense and experience tell us that the issuance of a check for which, at the time of presentation, there are insufficient funds for payment, is as likely to result from the drawer's erroneous bookkeeping or other mistake, or inattention, as from the drawer's fraudulent intent. That balance of probabilities is not tilted in favor of the Commonwealth by subsequent nonpayment after notice of dishonor. That is because common sense and experience also tell us that, once the mistake or inattention has occurred, for many individuals financial embarrassment and inability to pay are likely to follow. Surely, a defendant's inability to make restitution for a bad check within two business days after notice of dishonor does not warrant a finding beyond a reasonable doubt that an honest mistake or inattention was not the genesis of the check. In my view, whatever other evidence of the defendant's state of mind there may have been, it was far from overwhelming. I believe that the judge's instruction on prima facie evidence seriously undermined the jury's responsibility to find the several elements of the crime with which the defendant was charged beyond a reasonable doubt, and thus created a substantial risk of a miscarriage of justice.

Therefore, I would reverse the conviction. I would remand the case for trial,[2] and, for purposes of the next trial, I would advise that, if the evidence proves to be substantially the same as the evidence in the present record, no instruction of any kind relative to prima facie evidence will be warranted.

---

[2] My review of the record indicates that there is a serious question whether the evidence was sufficient as a matter of law to warrant a guilty finding. However, although the defendant raised that issue by motion at trial, she has not pursued it on appeal. The Commonwealth, therefore, has not had a fair opportunity to confront the issue. For that reason, I do not argue that the court should order the entry of judgment for the defendant.