NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-12238

COMMONWEALTH  vs.  CASANDRA B. LITTLES.

Essex.     March 9, 2017. - June 28, 2017.

Present:  Gants, C.J., Lenk, Hines, Gaziano, Lowy, & Budd, JJ.

Larceny.  Fraud.  Practice, Criminal, Instructions to jury, Harmless error.  Due Process of Law, Inference. Constitutional Law, Harmless error.  Error, Harmless. Evidence, Fraud, Prima facie evidence, Inference.

Complaint received and sworn to in the Lawrence Division of the District Court Department on January 21, 2014.

The case was tried before Michael A. Uhlarik, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

Philip A. Mallard, Assistant District Attorney (Lindsay M. Nasson, Assistant District Attorney, also present) for the Commonwealth.
Joseph K. Kenyon, Jr., for the defendant.

LOWY, J.  The case before us challenges the constitutionality of a jury instruction for the crime of drawing or uttering a fraudulent check.  The challenged instruction

informed the jury that they could infer that the defendant had both (1) knowledge of insufficient funds and (2) fraudulent intent if they found that the defendant "failed to make good on th[e] check within two days after she was notified that the bank had refused payment because of insufficient funds."  The instruction stems from G. L. c. 266, § 37, which designates the failure to make the required payment on the bad check within two days of notice as "prima facie evidence" of the defendant's intent and knowledge.  We conclude that the statute's designation of prima facie evidence and the corresponding instruction are constitutionally infirm because a defendant's failure to pay a check within two days of being notified of its dishonor is, without more, insufficient to warrant a jury in finding the essential elements of the crime beyond a reasonable doubt.  Nevertheless, we conclude that the error was harmless beyond a reasonable doubt in this case, and therefore we affirm the defendant's convictions.

Background.  The jury could have found the following facts. Between July 26 and 28, 2013, the defendant deposited four checks, totaling $15,000, into certain bank accounts she held at TD Bank via automated teller machines (ATMs).  The funds were credited to the respective accounts electronically on the day of the transaction, before the checks were finally negotiated. Each check was drawn from a single Citizens Bank account in the

defendant's name that had been closed for years.  All four checks eventually bounced and were returned to TD Bank by July 31, 2013.

Between the time she deposited the checks and the negotiation of the checks, the defendant transferred funds between her accounts at TD Bank, in the manner of a "check-kiting" scheme.[1]  After transferring the funds, but before the checks had been returned, the defendant made a number of expenditures, including nearly $3,000 on Walt Disney World and

---

[1] The United States Supreme Court has described a "check-kiting" scheme as follows:

> "The check kiter opens an account at Bank A with a nominal deposit.  He then writes a check on that account for a large sum, such as $50,000.  The check kiter then opens an account at Bank B and deposits the $50,000 check from Bank A in that account.  At the time of deposit, the check is not supported by sufficient funds in the account at Bank A.  However, Bank B, unaware of this fact, gives the check kiter immediate credit on his account at Bank B. During the several-day period that the check on Bank A is being processed for collection from that bank, the check kiter writes a $50,000 check on his account at Bank B and deposits it into his account at Bank A.  At the time of the deposit of that check, Bank A gives the check kiter immediate credit on his account there, and on the basis of that grant of credit pays the original $50,000 check when it is presented for collection.

> "By repeating this scheme, or some variation of it, the check kiter can use the $50,000 credit originally given by Bank B as an interest-free loan for an extended period of time.  In effect, the check kiter can take advantage of the several-day period required for the transmittal, processing, and payment of checks from accounts in different banks . . . ."  (Citation omitted.)

Williams v. United States, 458 U.S. 279, 281 n.1 (1982).

Sea World tickets, nearly $600 on her cellular telephone bill, over $700 on clothing and shoes, and a $2,000 cash withdrawal. The defendant ultimately overdrew her accounts at TD Bank by roughly $12,000.

In early August of 2013, a representative of TD Bank contacted the defendant by telephone and informed her that the checks had been returned. The defendant responded that she was out of town, but would remedy the situation when she returned. The defendant never did so, however, and testified at trial that she "forgot" and was overwhelmed by her own, and her mother's, health problems. By August 21, 2013, no repayment had been made and TD Bank sent a demand letter informing the defendant that she owed TD Bank $11,664.20. Within a week, the defendant still had not made any deposit. When TD Bank attempted to follow up with the defendant, it discovered that the defendant's cellular telephone number was no longer in service.

At trial, the defendant testified that she believed that her account at Citizens Bank was still open and that her tax refund had been deposited into that account. There was evidence, however, that the Citizens Bank account had been closed for years, and that she already had spent much of her $13,000 tax refund, which had been previously deposited into one of her accounts at TD Bank, well in advance of the four bounced checks.

The jury convicted the defendant on four counts of larceny by uttering a false check.  The defendant appealed, and we transferred the case to this court on our own motion.

Discussion.  Pursuant to § 37, an individual commits larceny if, with the intent to defraud, she obtains goods or services in exchange for a check that the individual wrote knowing there were insufficient funds in the account from which the check draws.[2]  Section 37 further provides that the act of "making, drawing, uttering or deliver[ing] such a check" constitutes "prima facie evidence of intent to defraud and of knowledge of insufficient funds . . . , unless the maker or drawer shall have paid the holder thereof the amount due thereon . . . within two days after receiving notice that such check . . . has not been paid by the drawee."

Based on the statutory language, the District Court has promulgated a model supplemental instruction in larceny by check cases in which the defendant does not take the requisite action within two days of notice of dishonor.  Instruction 8.460 of the Criminal Model Jury Instructions for Use in the District Court

---

[2] In relevant part, G. L. c. 266, § 37, states: "Whoever, with intent to defraud, makes, draws, utters or delivers any check, draft or order for the payment of money upon any bank . . . , with knowledge that the maker or drawer has not sufficient funds or credit . . . for the payment of such instrument . . . , and if money or property or services are obtained thereby shall be guilty of larceny."

(2009). The instruction given in this case over the defendant's objection, which conformed with the model instruction, stated:

"There has been some evidence in this case suggesting that the defendant failed to make good on this check within two days after she was notified that the bank had refused payment because of insufficient funds. If you find that to have been proved, it may be relevant to the issues of the defendant's knowledge and intent.

"If the defendant failed to make good on a check within two days after being notified that it had bounced, you are permitted to infer two other things: that at the time when the defendant originally wrote the check, she knew that there were insufficient funds or a line of credit to cover it at the bank, and also that she wrote the check with the intent to defraud. You are not required to draw such an inference of knowledge and intent, but you may.

"Even if there has been contrary evidence, you may still consider a failure to make good on the check within two days of notice as some evidence on the questions of knowledge and intent, and you may weigh it in your deliberations along with all the rest of the evidence on those two issues."

The defendant argues that the prima facie designation in § 37 and the related instruction are unconstitutional, because an individual's failure to pay a check within two days of notice of dishonor does not have a sufficiently strong, logical connection to the individual's knowledge of insufficient funds or intent to defraud at the time the check was written. We agree. Because the defendant objected to the instruction at trial, we will affirm the convictions only if the error was harmless beyond a reasonable doubt. See Commonwealth v. Petetabella, 459 Mass. 177, 189 (2011). Cf. Commonwealth v.

Klein, 400 Mass. 309, 314-315 (1987) (instruction did not create substantial risk of miscarriage of justice).

1. Statutory designation of prima facie evidence in criminal statutes. In criminal cases in the Commonwealth, when the Legislature designates "evidence 'A' [to be] prima facie evidence of fact 'B,'" then, in the absence of competing evidence, the fact finder is permitted but not required to find 'B' beyond a reasonable doubt." Commonwealth v. Maloney, 447 Mass. 577, 581 (2006). See Mass. G. Evid. § 302(c) (2017). The designation of prima facie evidence in this context is "structurally the same as" a "permissive inference." Commonwealth v. Pauley, 368 Mass. 286, 292-293 (1975). In other words, the permissive inference satisfies the Commonwealth's burden of production as to one or more elements of a crime. As reflected in the judge's instruction in this case, when contrary evidence is introduced, the basic fact (i.e., the first fact) continues to be some evidence of the inferred fact (i.e., the second fact or resultant fact). Mass G. Evid. § 302(c).

When a jury may find an inferred fact based on proof of a basic fact, there must be a strong, logical connection between the two facts to ensure that the defendant receives the full benefit of the reasonable doubt standard. See Tot v. United States, 319 U.S. 463, 467-468 (1943). See generally Pauley, 368 Mass. at 294-299. An instruction explaining a permissive

inference should only be given when it will "not undermine the factfinder's responsibility at trial, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt." County Court of Ulster County, N.Y. v. Allen, 442 U.S. 140, 156 (1979). Provisions designating prima facie evidence, such as § 37, "do not . . . alter the Commonwealth's substantive burden of proof . . . . Rather, when properly employed . . . , such provisions are merely a matter of administrative convenience that eliminate uncertainty as to what will constitute sufficient proof." Maloney, 447 Mass. at 581-582.

We have yet to address the constitutionality of the prima facie designation in § 37. See Klein, 400 Mass. at 315 (not reaching constitutionality issue). But see id. at 316-320 (O'Connor, J., dissenting) (relationship between initial and inferred facts in § 37 not sufficiently rational to satisfy due process). The key inquiry in assessing the constitutionality of a permissive inference is the strength of the relationship between the basic fact and the inferred fact "in light of present-day experience." See Barnes v. United States, 412 U.S. 837, 844-845 (1973). The constitutionally required connection between the two facts has been described as a "rational connection," a connection that is "more likely than not," and as a connection that leaves no "reasonable doubt." Id. at 841-843, and cases cited. Yet, this "ambiguity is traceable in large

part to variations in language and focus rather than to differences of substance." Id. at 843. Accordingly, other circumstances involving permissive inferences in criminal statutes are illustrative.

a. The connection between the basic fact and the inferred fact. In Pauley, 368 Mass. at 289, 292, 297, we found no constitutional infirmity in a regulation that permitted the fact finder to presume that the registered owner of an automobile was responsible for evading a toll. We concluded that the relationship between the basic fact (ownership of the vehicle) and the inferred fact (that the owner was the individual driving the vehicle) was sufficient to allow the fact finder to find the defendant guilty beyond a reasonable doubt. Id. at 298. Similarly, in Barnes, 412 U.S. at 843-846, the United States Supreme Court upheld the constitutionality of drawing "an inference of guilty knowledge . . . from the fact of unexplained possession of stolen goods," where the defendant possessed "recently stolen Treasury checks payable to persons he did not know." In these circumstances, the Court determined that the unexplained possession of such items was "sufficient to enable the jury to find beyond a reasonable doubt that [the] petitioner knew the checks were stolen." Id. at 845-846.

Where courts have rejected the sufficiency of the connection between the initial and inferred facts, they

typically have done so where the inferred fact has a sufficiently probable, noncriminal explanation. For example, in Tot, 319 U.S. at 466, 472, the Supreme Court reversed a conviction premised on an inference that a defendant who possessed firearms and ammunition after being convicted of a violent crime had received the alleged illicit material via interstate commerce -- an element of the Federal crime. In the absence of additional evidence regarding the mechanisms by which the defendant received the material, "there [was] no reasonable ground for a[n] [inference] that its purchase or procurement was in interstate rather than in intrastate commerce." Id. at 468. Compare United States v. Gainey, 380 U.S. 63, 69-71 (1965) (upholding inference that person's unexplained presence at illegal still could be used to infer guilt for participation in crime of illegal distilling), with United States v. Romano, 382 U.S. 136, 141-144 (1965) (striking down inference that person's unexplained presence at illegal still could be used to infer guilt for crime of possessing illegal still).

  b.  The permissive inference of § 37. We agree with the dissent in Klein that the prima facie designation in § 37 and the corresponding jury instruction are unconstitutional; that is, the basic fact (that the defendant did not make good on a check with insufficient funds within two days of being notified that it had bounced) does not constitute prima facie evidence of

the two inferred facts, both of which are elements of the crime: that the defendant, at the time the check was issued, (1) knew there were insufficient funds and (2) had fraudulent intent.

The instruction in this case informed the jury that, based on the defendant's failure to make good on the checks within two days of notice of dishonor, "[they were] permitted to infer two other things:  that at the time when the defendant originally wrote the check, she knew that there were insufficient funds or a line of credit to cover it at the bank, and also that she wrote the check with the intent to defraud."  This instruction suggested that no more evidence was needed to prove these elements, which the Commonwealth had to prove beyond a reasonable doubt.  A permissive inference cannot have the effect of reducing the Commonwealth's burden to prove a crime beyond a reasonable doubt.  See Maloney, 447 Mass. at 581-582.

Without a stronger, rational connection between a defendant's failure to correct a bad check within two days of notice and the defendant's knowledge and intent, "the combination of natural chance and absence from the evidence of an explanation consistent with innocence" does not prove the two inferred facts beyond a reasonable doubt.  Pauley, 368 Mass. at 293.  "Surely, a defendant's inability to make restitution for a bad check within two business days after notice of dishonor does not warrant a finding beyond a reasonable doubt that an honest

mistake or inattention was not the genesis of the check." Klein, 400 Mass. at 319 (O'Connor, J., dissenting). See Tot, 319 U.S. at 468 (inference invalid in light of probable, innocent explanation). Further, the essential question is whether the defendant had the requisite knowledge and intent at the time she wrote the check. Section 37 does not establish any temporal limitation between the writing of the check and notice of dishonor. If, for example, a defendant received notice of dishonor regarding a check written three months earlier, the defendant's failure to pay the check within two days of the notice would say little about her state of mind at the time she wrote the bad check.

Unlike the possession of stolen checks made out to persons unknown to a defendant and knowledge that the checks were stolen, Barnes, 412 U.S. at 844-846, the defendant's failure to make the appropriate payment after notice of dishonor does not tilt the "balance of probabilities . . . in favor of the Commonwealth." Klein, 400 Mass. at 319 (O'Connor, J., dissenting). See Tot, 319 U.S. at 468. See also Pauley, 368 Mass. at 292-293. Because the designation of prima facie evidence in § 37 effectively dilutes the Commonwealth's burden of proof, it is constitutionally infirm and thus the instruction given by the judge was invalid.

2.  Harmless error.  When faced with a preserved constitutional error, we reverse a conviction unless we are satisfied that the error was harmless beyond a reasonable doubt. Petetabella, 459 Mass. at 189.  "Finding that an improper instruction was harmless beyond a reasonable doubt is the equivalent of saying that the error was 'unimportant in relation to everything else the jury considered on the issue in question,' requiring the reviewing court 'to make a judgment about the significance of the [inference] to reasonable jurors, when measured against the other evidence considered by those jurors independently of the [inference].'"  Commonwealth v. Nolin, 448 Mass. 207, 218 (2007), quoting Yates v. Evatt, 500 U.S. 391, 403-404 (1991).

This analysis involves two steps.  First, we determine "what evidence the jury actually considered" by evaluating the instructions given to them, and assuming that the jury considered "relevant evidence on a point in issue when they are told that they may do so."  Nolin, 448 Mass. at 218.  Second, we weigh the probative effect of the evidence actually considered against the probative effect of the inference.  Id. at 218-219. For a conviction to survive the second step, we must conclude that "the evidence considered was 'so overwhelming as to leave it beyond a reasonable doubt that the verdict resting on that evidence would have been the same in the absence of the

[improper inference]."  Id. at 219, quoting Commonwealth v. Medina, 430 Mass. 800, 803 (2000).  Both steps are satisfied in this case.

As to the first step, we have acknowledged already that the instruction incorrectly informed the jury that proof of the defendant's failure to address the bounced checks within two days was sufficient to infer the defendant's knowledge of insufficient funds and intent to defraud.  However, unlike the instruction challenged in Nolin, 448 Mass. at 219, the instruction did not go so far as to "direct" the jury to find knowledge and intent on proof of the defendant's failure to make the checks good.[3]  Rather, the instruction in this case told the jury that they were permitted to find intent and knowledge, but not required to do so.

The instruction further made clear to the jury that, if evidence contradicted the defendant's knowledge and intent, they could consider the failure to pay as some evidence of knowledge and intent.  Because the defendant testified that she did not have the knowledge or intent, we presume that the jury considered the basic fact in this manner.  See Nolin, 448 Mass. at 218; Klein, 400 Mass. at 314.  Therefore, the jury were

---

[3] In Commonwealth v. Nolin, 448 Mass. 207, 217 (2007), the judge informed the jury that "a person is presumed to intend the natural and probable consequences of his acts.  So, in considering intent, remember that."

instructed in a manner that conveyed that the unconstitutional permissive inference did not apply in this case, due to the defendant's testimony that she lacked the requisite knowledge and intent.

Although an insufficient basis to find the requisite knowledge and intent, a defendant's failure to make good on a bad check may still be relevant evidence to support those elements.[4]  We can then resolve the second step of the Nolin analysis by determining whether instructing the jury that the failure to make good on the check within two days after notice of dishonor constitutes reversible error.  Because the instruction was unnecessary, although its substance was not legally incorrect, it should not have been given.  We are convinced, however, that any error is harmless beyond a reasonable doubt in light of all of the evidence.  Commonwealth

_____

[4] In many cases, if a defendant knowingly wrote a check with insufficient funds with the intent to defraud, the defendant would not voluntarily make the aggrieved party or parties whole. Thus, the defendant's failure to make good on the check may make it "more probable" that the defendant knew of the insufficient funds and intended to defraud than "it would be without the evidence."  Mass. G. Evid. § 401 (2017).  Simply because evidence is relevant, however, does not require that an instruction be given to the jury explaining its relevance.  Nor does the statute mandate the provision of an instruction.  A prosecutor may argue a defendant's failure to pay as evidence of intent, and a defendant may introduce evidence to the contrary. Similarly, a trial judge may consider a defendant's failure to make good on a bounced check as evidence of knowledge or intent, when considering whether to grant a motion for a required finding of not guilty.

v. Vasquez, 456 Mass. 350, 362 (2010) (error harmless when other evidence is so overwhelming that it nullifies any effect).[5]

The overwhelming evidence demonstrated that the defendant knowingly with the intent to defraud, rather than mistakenly as she testified, wrote checks that drew funds from a long-closed account. Further, the defendant utilized ATM deposit systems that posted funds electronically, allowing her to move funds before the checks cleared -- which she promptly did in the manner of a check-kiting scheme. Finally, the defendant did not merely fail to make good on the checks within two days of notice of dishonor, but did not enter into a repayment agreement for an additional nine months. The strength of the Commonwealth's case, when juxtaposed against the defendant's testimony explaining her conduct, "nullif[ies] any effect" that the minor instructional error "'might have had' on the fact finder or the findings." Vasquez, 456 Mass. at 362, quoting Commonwealth v. Tyree, 455 Mass. 676, 704 n.44 (2010).

Conclusion. The designation of prima facie evidence in § 37 is unconstitutional and, thus, so too was the corresponding instruction. The instruction suggested that proof of a defendant's failure to make good on a bad check within two days

_____

[5] We need not decide whether the error of unnecessarily providing this instruction should be viewed as constitutional or prejudicial error, because even under the less forgiving constitutional standard, we conclude that reversal is not warranted.

of being notified was sufficient to infer that the defendant (1) knew of the insufficient funds and (2) possessed the intent to defraud.  Each of the inferred facts is an essential element of the crime that must be proved beyond a reasonable doubt, and proof of the basic fact alone does not warrant finding the inferred facts by that standard.  Nevertheless, the defendant offered contrary evidence through her testimony, and the jury were instructed that, when there is contrary evidence, they may consider a failure to honor the check within two days of notice only as "some evidence" of the defendant's knowledge and intent.  In light of the overwhelming evidence of the defendant's knowledge and intent, the instructional error was harmless beyond a reasonable doubt.  We therefore affirm the defendant's convictions.

<u>Judgments affirmed</u>.