SUPREME JUDICIAL COURT 
 
 COMMONWEALTH vs. DOMINIQUE M. OLIVER

 
 Docket:
 SJC-13486
 
 
 Dates:
 February 5, 2024 - September 24, 2024
 
 
 Present:
 Budd, C.J., Gaziano, Kafker, Wendlandt, Georges, & Dewar, JJ.
 
 
 County:
 Middlesex
 

 
 Keywords:
 Uttering Forged Instrument. Negotiable Instruments, Forgery. Forgery. Evidence, Intent. Intent. Practice, Criminal, Required finding.
 
 

             Complaint received and sworn to in the Malden Division of the District Court Department on March 6, 2019.
            The case was tried before William G. Farrell, J.
            After review by the Appeals Court, 102 Mass. App. Ct. 609 (2023), the Supreme Judicial Court granted leave to obtain further appellate review.
            Joshua M. Daniels for the defendant.
            Daniel DeBlander, Assistant District Attorney, for the Commonwealth.
            BUDD, C.J.  Dominique M. Oliver, the defendant, was convicted of uttering after she cashed a forged check drawn on the account of a person who did not know her.  Because the Commonwealth failed to prove beyond a reasonable doubt that the defendant knew the check had been forged, the conviction must be reversed.  
            Background.  We recount the material facts as the jury could have found them, reserving some details for later discussion.  On January 19, 2019, the defendant walked into a bank, presented her driver's license, and cashed a personal check made out to her in the amount of $3,600.  The funds were drawn from an account belonging to an individual whose first name is Eileen (account holder).  On the face of the check was the purported signature of the account holder with a misspelled first name.  The following month, the account holder was notified by her bank that her account had been depleted.  She subsequently contacted police after discovering that several checks had been drawn on her account without her knowledge or authorization.  
            The defendant was charged with larceny by check in violation of G. L. c. 266, §§ 30 (1) and 37, and uttering in violation of G. L. c. 267, § ?5.  At trial, the account holder denied writing or signing the check cashed by the defendant and stated that she did not know the defendant.  The account holder further testified that a caregiver had stolen at least one check from her and had altered others.  At the close of the Commonwealth's evidence, the defendant unsuccessfully moved for a required finding of not guilty.  See Mass. R. Crim. P. 25 (a), as amended, 420 Mass. 1502 (1995).  The jury returned a verdict of guilty on the uttering charge,[1] and the Appeals Court affirmed her conviction.  See Commonwealth v. Oliver, 102 Mass. App. Ct. 609 (2023).  We granted the defendant's application for further appellate review.  
            Discussion.  We view the evidence presented at trial in the light most favorable to the Commonwealth to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  See Commonwealth v. Latimore, 378 Mass. 671, 677-678 (1979).  "Proof of the essential elements of the crime may be based on reasonable inferences drawn from the evidence . . . , and the inferences a jury may draw 'need only be reasonable and possible"; "[they] need not be necessary or inescapable,'" Commonwealth v. West, 487 Mass. 794, 800 (2021), quoting Commonwealth v. Casale, 381 Mass. 167, 173 (1980).
            To convict a defendant of uttering, the Commonwealth must prove that the defendant (1) offered as genuine; (2) an instrument; (3) known to be forged; (4) with the intent to defraud.  See Commonwealth v. O'Connell, 438 Mass. 658, 664 n.9 (2003), citing G. L. c. 267, § 5.[2]  Here, the salient question is whether the evidence presented at trial was sufficient to prove that the defendant knew the check was forged.[3]  
            Knowledge "is often not susceptible of proof by direct evidence, so resort is frequently made to proof by inference from all the facts and circumstances developed at the trial."  Casale, 381 Mass. at 173.  Importantly, although a "conviction may rest exclusively on circumstantial evidence, . . . [it] may not . . . be based on conjecture or on inference piled upon inference."  Commonwealth v. Jones, 477 Mass. 307, 316 (2017).  
            The Commonwealth contends that the following evidence presented at trial provided sufficient proof of the defendant's knowledge:  (1) the account holder did not know the defendant and had no reason to pay her; (2) the check that the defendant cashed had been stolen "recently"; (3) the account holder's signature on the check was misspelled; and (4) the check was cashed for a "rather large" amount of money.  We conclude that, considered collectively, the evidence is insufficient to allow any rational trier of fact to have determined beyond a reasonable doubt that the defendant knew that the check was forged.  
            1.  The account holder's unfamiliarity with the defendant.  The Commonwealth maintains that the fact that the account holder was unfamiliar with the defendant and had no reason to pay her is evidence that the defendant knew of the forgery.  This fact does little to allow an inference that the defendant knew the check to be false where personal checks, by design, are convenient to use and highly portable.  And because personal checks easily can be used by another to pay an individual on behalf of an account holder, it is not necessarily unusual for the recipient of a check and an account holder to be unfamiliar with one another.[4]  See Commonwealth v. Scordino, 102 Mass. App. Ct. 586, 588 (2023) ("Recipients of such checks may not know, and may never have met, the individual on whose accounts such checks are drawn").[5]  It certainly does not establish sufficient proof of knowledge.
            2.  Possession of "recently stolen" check.  The Commonwealth also contends that an inference of knowledge may be drawn from the check having been "recently stolen."  We agree  that an inference of guilty knowledge may be drawn from the defendant's possession of a recently stolen check.  See Commonwealth v. Burns, 388 Mass. 178, 183 (1983).  However, here the Commonwealth failed to establish that the check possessed by the defendant was in fact "recently stolen."  
            Based on the evidence at trial, the check was cashed on January 19, 2019.  The only evidence pertaining to the check's theft was that it was stolen "in 2019."[6]  With that scant information, the time between the theft and the negotiation of the check was anywhere from one to nineteen days.  An inference of guilty knowledge may be made where a defendant is in possession of property within one day, four days, or less than a week of its having been stolen.  See, e.g., Burns, 388 Mass. at 178, 179 (possession of goods one day after being stolen permits inference of guilty knowledge); Commonwealth v. Aponte, 71 Mass. App. Ct. 758, 759, 762 (2008) (possession of property four days after being stolen permits inference of guilty knowledge).  See also Oliver v. Commonwealth, 35 Va. App. 286, 296 (2001) (conviction upheld where defendant had access to account holder's checkbook less than one week before check was cashed).  The same is not true here where the theft of the check could have occurred as much as nearly three weeks before the defendant's negotiation of it.  When considering whether the knowledge element has been satisfied, a fact finder may not guess at the date on which the check was stolen.[7]  See Commonwealth v. Lopez, 484 Mass. 211, 216 (2020) (although "[t]he jury are permitted to draw rational inferences from the evidence, . . . no essential element of the crime may rest in surmise, conjecture, or guesswork").  
            3.  The signature.  The Commonwealth emphasizes the fact that the account holder's first name on the signature line of the check was misspelled with an extra "l" (i.e., "Eilleen").[8]  The additional "l," written in cursive, is not particularly obvious.  Contrast Commonwealth v. Tavares, 87 Mass. App. Ct. 471, 473, 475 (2015) (sufficient evidence of knowledge where employee observed that counterfeit bills were off-color and glued with sheets of paper).  Indeed, it seems that neither the bank teller who cashed the check, nor the bank's record-keeper who testified that the account holder signed it, noticed the inconsistency.[9]  Moreover, the prosecutor did not mention this detail at trial, nor was it raised on appeal.  In fact, the misspelling of the account holder's signature on the check was raised as an issue for the first time by the Appeals Court in its ruling on appeal.  
            4.  Check cashed for "large amount" of money.  The Commonwealth also points to evidence that the defendant cashed, rather than deposited, the check, which was made out for a "rather large amount of money."  What constitutes a "large amount" is relative and depends entirely on the circumstances, including whether the defendant had a bank account into which to deposit the check.[10]  Nevertheless, we agree that this evidence properly may contribute to an inference of knowledge.  Importantly, however, the weight it receives must be commensurate with the surrounding circumstances.  See, e.g., O'Connell, 438 Mass. at 668 (defendant forged five checks); Commonwealth v. Catania, 377 Mass. 186, 189 (1979), overruled on another ground by Commonwealth v. Crocker, 384 Mass. 353, 361 (1981) (suspicious pattern of cashing cashier's check immediately after cashing false check); Commonwealth v. Britt, 83 Mass. App. Ct. 1136 (2013) (unpublished opinion) (defendant cashed two checks for $3,850 at two different locations within same hour, among several anomalies on check).  See also Huntley v. State, 4 S.W.3d 813, 814-815 (Tex. Ct. App. 1999) (check stolen one day prior, defendant matched general description of thief, suspicious cashing activity, and large check amount).
            5.  The totality of the evidence.  Each of the above factors might support the knowledge element to varying degrees.  However, "it is not enough for the appellate court to find that there was some record evidence, however slight, to support each essential element of the offense."  Latimore, 378 Mass. at 677.  
            The account holder's unfamiliarity with the defendant coupled with the defendant's mere possession of a stolen check together demonstrate little, if anything, regarding the defendant's knowledge of the forgery.  See Heath v. State, 382 So. 2d 391, 392 (Fla. Dist. Ct. App. 1980) (possession of stolen check and account holder's unfamiliarity with defendant failed to prove knowledge of forgery).  The significance of the slight misspelling of the account holder's signature in the circumstances described supra is negligible.  See Gabelli v. Securities & Exch. Comm'n, 568 U.S. 442, 450-451 (2013) ("Most of us do not live in a state of constant investigation; absent any reason to think we have been injured, we do not typically spend our days looking for evidence that we were lied to or defrauded").  The fact that the defendant cashed rather than deposited a check for $3,600, although perhaps unusual, together with the above-referenced evidence does not permit a rational trier of fact to find beyond a reasonable doubt that the defendant knew that the check was forged.  See Commonwealth v.  Littles, 477 Mass. 382, 387 (2017) ("Where courts have rejected the sufficiency of the connection between the initial and inferred facts, they typically have done so where the inferred fact has a sufficiently probable, noncriminal explanation").
            Moreover, other than the fact that the defendant cashed a check for a large sum, the Commonwealth presented no evidence of unusual circumstances surrounding the bank transaction.  Cf. Spencer v. State, 700 S.W.2d 300, 302 (Tex. Ct. App. 1985) (insufficient proof of knowledge where defendant not implicated in theft of check, made no statements demonstrating knowledge of forgery, made no inculpatory statements, and did not attempt to flee).  To the contrary, based on the evidence presented at trial, the defendant did not appear nervous or otherwise act suspiciously either before or after she cashed the check.  Contrast Commonwealth v. Salemme, 395 Mass. 594, 601 (1985) ("Evidence of flight indicates consciousness of guilt and is probative of the defendant's guilty state of mind" [citation omitted]); Palmer v. State, 735 S.W.2d 696, 697-698 (Tex. Ct. App. 1987) (defendant looked around frequently and paced during transaction).  The check was made out in the defendant's name, and she presented her own valid identification.[11]  Contrast United States v. Jirak, 728 F.3d 806, 812 (8th Cir. 2013), cert. denied, 572 U.S. 1102 (2014) (defendant signed check with false name); Preyer v. State, 369 So. 2d 901, 907 (Ala. Crim. App. 1979) (check not in defendant's name); State v. Brown, 235 Conn. 502, 511 (1995) (defendant used false identification and possessed several false checks from different accounts).  Nor did the defendant provide conflicting or incriminating statements about the check.  Contrast State v. Sullivan, 205 Ariz. 285, 287 (Ct. App. 2003) (defendant gave conflicting statements); State v. Whitley, 512 S.W.2d 840, 843 (Mo. Ct. App. 1974) (defendant made statement to detective tending to show he knew checks were stolen); Commonwealth v. Lee, 495 Pa. 461, 464 (1981) (defendant gave bank teller "conflicting explanations for his possession of the check"); State v. Mulholland, 111 R.I. 154, 155 (1973) (defendant told officer that she presented check on behalf of recently made friend, but was unable to provide further details, including location of friend's home or workplace).  
            Conclusion.  Because the Commonwealth failed to introduce sufficient evidence from which a rational trier of fact could find beyond a reasonable doubt that the defendant knew that the check she presented was forged, the judgment of the District Court is reversed, the verdict is set aside, and judgment shall enter for the defendant.  
So ordered.  
footnotes

            1 The defendant was found not guilty of larceny.  
            2 General Laws c. 267, § 5, provides:
"Whoever, with intent to injure or defraud, utters and publishes as true a false, forged or altered record, deed, instrument or other writing mentioned in the four preceding sections, knowing the same to be false, forged or altered, shall be punished by imprisonment in the state prison for not more than ten years or in jail for not more than two years."
            3 As we conclude there was insufficient evidence of knowledge of the forgery, we need not consider whether the defendant intentionally passed the forged instrument with the intent to defraud.  See Matula v. State, 220 So. 2d 833, 834 (Miss. 1969) ("Without guilty knowledge criminal intent cannot exist").
            4 See PNC Insights, How to Endorse a Check to Someone Else (July 10, 2024), https://www.pnc.com/insights/personal-finance
/spend/how-to-endorse-check-to-someone-else.html [https://perma
.cc/TLU3-78J5] (describing reasons why one might endorse or sign over check to someone else, such as being unbanked or underage, lack of access to bank location, or owing someone else money).  
            5 By contrast, business checks are typically only issued to individuals with a connection to the business.  Notably, the cases on which the Commonwealth relies to establish knowledge in this case concern defendants attempting to negotiate payroll or other business checks where they had no relationship to the business.  See Commonwealth v. Green, 203 A.3d 250, 255 (Pa. Super. Ct. 2019) (en banc); Johnson v. State, 425 S.W.3d 516, 521-522 (Tex. Ct. App. 2012); State v. Williams, 712 P.2d 220, 223 (Utah 1985).
            6 This information was elicited from the account holder by trial counsel on cross-examination.  
            7 The Commonwealth also failed to present any evidence linking the defendant to the theft.  See Griffin v. State, 908 S.W.2d 624, 626-628 (Tex. Ct. App. 1995) (knowledge requirement not satisfied by proof of theft in uttering prosecution without evidence of connection between defendant and theft).
            8 The front of the redacted check is depicted below:
            9  The bank teller processed and cashed the check without flagging the misspelled signature, and at trial, after reviewing the check, the record-keeper testified that "Eileen signed it."
            10 According to a recent study released by the Federal Deposit Insurance Corporation, nearly six million households are "unbanked," that is, those where no occupant had a checking or savings account.  See FDIC National Survey of Unbanked and Underbanked Households 1 (2021).  
            11 The Commonwealth also points to the similarity between the defendant's endorsement on the back of the check and the purported signature of the account holder, arguing that the jury were entitled to infer that the defendant forged the check.  As the Commonwealth failed to introduce any evidence (including expert testimony) on this aspect of the check and did not make the argument at trial, we do not consider it.  See Commonwealth v. Bettencourt, 447 Mass. 631, 633-634 (2006) ("we need not consider an argument . . . raised for the first time on appeal. . . .  Trial judges cannot be expected to rule, and indeed should not, on theories not presented to them, and defendants cannot respond to arguments not made at the trial level").